UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SYLVESTER BLAKE,

                              Petitioner,

          v.

DANIEL F. MARTUSCELLO, Superintendent,
Coxsackie Correctional Facility,

                              Respondent.

------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 08 2013 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**
10-CV-02570 (MKB)

MARGO K. BRODIE, United States District Judge:

Petitioner Sylvester Blake, proceeding *pro se*, brings the above-captioned petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claims arise from a judgment of conviction after a jury trial in New York Supreme Court, Kings County, for attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree. Petitioner was sentenced to concurrent determinate terms of imprisonment of twenty years for attempted murder, ten years for weapon possession and seven years for assault. Petitioner appealed his conviction to the New York Appellate Division, Second Department, raising five claims: (1) the trial court erred in denying his motion to suppress statements made following his arrest; (2) the trial court erred in allowing testimony regarding the contents of a lost videotape in violation of the best evidence rule; (3) testimony pertaining to his failure to respond after Detective Hunter left his card at Petitioner's address should not have been admitted into evidence at trial; (4) his convictions were against the weight of the evidence; and (5) the sentence imposed was excessive. The Appellate Division rejected Petitioner's claims and affirmed his

conviction. *People v. Blake*, 876 N.Y.S.2d 653 (App. Div. 2009). The New York Court of Appeals denied leave to appeal. *People v Blake*, 12 N.Y.3d 923 (2009). Petitioner raises the first four of the five claims in the instant petition. For the reasons set forth below, the petition is denied.

I. **Background**

The evidence at trial showed that on January 19, 2005, at approximately 9:15 p.m., Petitioner entered Evangelista Urena's grocery store and almost immediately opened fire on Thomas Pettaway, who had entered the store a minute earlier. (Resp't App. Br. 3.) Petitioner fired several shots at Pettaway, hitting him in the leg. (*Id.*) Fifteen-year-old Jasmine Lopez, who happened to be in the store with her younger brother at the time, was also grazed by a bullet on the ankle. (*Id.*) After Petitioner and Pettaway left the store, Urena called 911. (*Id.*) Detectives responded to the scene of the incident and questioned both Pettaway and Lopez about the incident. (Pet. App. Br. 5.) Lopez provided detectives with a description of Petitioner as the shooter. (*Id.* at 6.)

Petitioner was arrested on May 10, 2005, without a warrant, in a basement apartment of a private home at 58 Interboro Parkway, Brooklyn, New York. (*Id.* at 6, 33–36; Resp't App. Br. 3, 5; Opp'n Aff. ¶ 8.) Petitioner's official residence was 61 Riverdale Avenue, Brooklyn, New York. (Resp't App. Br. 5, Opp'n Aff. ¶ 8.) Petitioner made two post-arrest statements. (Pet. App. Br. 6.) First, while being fingerprinted, Petitioner asked what he was being charged with, and, upon being told that it was two counts of assault, replied that "he wasn't shooting at the girl, he was shooting at the male." (*Id.*; Resp't App. Br. 3.) Second, while making a phone call from the jail cell, a detective overheard Petitioner say, "I can't believe I got bagged, somebody snitched on me. When I find out, they're gonna have problems. I was going back to Miami."

2

(Pet. App. Br. 6.) The next day, Petitioner was positively identified in a lineup by Lopez and her brother. (*Id.*)

Petitioner was charged by indictment with murder in the second degree, assault in the second degree, attempted assault in the first degree, attempted assault in the second degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Prior to Petitioner's trial, the court held a *Dunway*,[1] *Huntley*[2] and *Wade*[3] suppression hearing. (*See* Resp't App. Br 4–11; Hearing Tr. 100:4–7.) Petitioner argued that the statements made after his arrest should be suppressed because the arrest was unlawful and violated *Payton v. New York*, 445 U.S. 573 (1980).[4] (Resp't

---

[1] *Dunaway v. New York*, 442 U.S. 200 (1979), "requires the exclusion of statements obtained as a result of an unlawful arrest made without probable cause." *McClary v. Conway*, 492 F. App'x 157, 159 (2d Cir. 2012) (summary order). A hearing held pursuant to *Dunaway* addresses whether there was probable cause to support an arrest and whether post-arrest statements should be suppressed. *See Ray v. Bradt*, No. 11-CV-400, 2013 WL 1335819, at *1 n.2 (E.D.N.Y. Feb. 1, 2013); *Young v. New York*, No. 11-CV-00110, 2012 WL 6644993, at *7 n.10 (E.D.N.Y. Dec. 20, 2012); *Theard v. Artus*, No. 09-CV-5702, 2012 WL 4756070, at *2 n.3 (E.D.N.Y. Aug. 27, 2012), *report and recommendation adopted*, No. 09-CV-5702, 2012 WL 4757897 (E.D.N.Y. Oct. 4, 2012).

[2] *People v. Huntley*, 15 N.Y.2d 72 (1965), is a New York Court of Appeals case which addresses when a confession is voluntary. "A *Huntley* hearing is a pre-trial proceeding to determine the admissibility of a confession or admission." *Acosta v. Artuz*, 575 F.3d 177, 187 n.3 (2d Cir. 2009); *see also Raheem v. Kelly*, 257 F.3d 122, 128 (2d Cir. 2001) ("[A] pretrial *Huntley* hearing [is] a proceeding to determine whether a confession should be suppressed . . . .").

[3] A hearing held pursuant to *United States v. Wade*, 388 U.S. 218 (1967) determines the propriety of identification procedures. *Young v. Conway*, 715 F.3d 79, 94 (2d Cir. 2013) ("[A] Wade hearing deal[s] with the propriety of a lineup identification . . . ." (citations omitted)); *Reily v. Ercole*, 491 F. App'x 225, 228 (2d Cir. 2012) (summary order) ("The purpose of a *Wade* hearing is only to determine whether there is sufficient evidence of the reliability of an identification to allow it to be introduced at trial."); *Theard*, 2012 WL 4756070, at *2 n.3 ("A *Wade* hearing is held to determine whether identification procedures were unduly suggestive.").

[4] Statements made pursuant to an unlawful arrest should be suppressed. *See United States v. Russell*, 501 F. App'x 67, 69 (2d Cir. 2012) (summary order) (discussing suppression of post-arrest statements), *cert. denied*, No. 12-9709, 2013 WL 1499184 (May 13, 2013). In

3

App. Br 4–11.) The court denied Petitioner's motion to suppress and found the arrest lawful. (Hearing Tr. 107:12–14.) The court made several findings, crediting the testimony of the witnesses presented by the State and finding Petitioner's testimony as not credible. (*Id.* at 100:8–14.) The court found that Petitioner resided at 61 Riverdale Avenue[5] and not at 58 Interboro Parkway, where he was arrested, (*id.* 101:20–25), and that Petitioner was illegally present at 58 Interboro Parkway when he was found there, (*id.* at 107:6–10). The court also found that when Petitioner was arrested at 58 Interboro Parkway in a basement apartment, the police had been told that no one was supposed to be in the apartment and the detectives entered upon hearing noises coming from behind the door, and thus, exigent circumstances existed. (*Id.* at 102:9–24; 106:20–23.) The court further found that Petitioner made the two incriminating statements without being prompted by the detectives. (*Id.* 106:12–19.)

Several witnesses testified at trial including the police officers involved in the investigation, Urena, Jasmine Lopez and her brother. The Lopez siblings testified that Petitioner entered the store with a scarf covering his face. (Tr. 455:11–459:24, 502:21–22, 505:1–5.) Jasmine Lopez testified that she was able to see Petitioner's face because the scarf began to fall once he started shooting. (*Id.*) Urena and the Lopez siblings testified consistently that they saw Pettaway enter the store and observed Petitioner enter the store after him. (*Id.* at 451:13–456:11, 502:10–504:22, 669:5–674:1.) The witnesses also testified that Petitioner was quite short and

---

*Payton v. New York*, the Supreme Court held that absent certain exceptions, such as exigent circumstances or consent, arrests in a person's home without a warrant would be a violation of the Fourth Amendment. 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."); *see also Montanez v. Sharoh*, 444 F. App'x 484, 486 (2d Cir. 2011) (summary order) (noting that arrests in a person's home "without a warrant are presumptively unreasonable" (alteration omitted) (quoting *Payton*, 445 U.S. at 586)).

[5] The transcript states "Riverside" and not "Riverdale" but this appears to be a mistake in the transcript, as all other sources refer to the location as "Riverdale."

chubby, rendering it unlikely that they would mistake him due to his distinct build. (*Id.* at 455:11–12, 502:21–22.) The police officers testified that during the investigation, they returned to the store to view the surveillance videotape. (Trial Tr. at 787:22–789:12; 860:4–15; 863:13–25; 882:23–884:2.) The videotape was viewed by Urena and the officers. (*Id.*) Detective Parsekian took the videotape from the store after viewing it and placed it in a case folder upon his return to the precinct. (*Id.* at 789:10–18.) Several months after Petitioner's arrest, officers could not find the videotape. (*Id.* at 792:2–24.) All the officers testified to the voucher process regarding the videotape and all the circumstances that may have resulted in the loss of the videotape. (*See, e.g., id.* at 790:5–792:24; 864:9–20.) No one knew what happened to the videotape. (*Id.*) The officers and Urena testified that "nothing" could be seen on the videotape due to the poor quality. (*Id.* at 719:24–720:11; 787:22–789:12; 860:4–15; 863:13–25; 882:23–884:2.)

Detective Hunter testified about his attempts to find Petitioner at various locations, including 61 Riverdale Avenue. (Pet. App. Br. 22.) He left his business card with Petitioner's son Tyrell at 61 Riverdale Avenue, and asked Tyrell to have Petitioner contact him. (*Id.* at 865:23–866:10.) Detective Hunter met with an unnamed female who had been at 58 Interboro Parkway with Petitioner. (*Id.* at 866:11–867:9.) Detective Hunter learned that Petitioner had "been hiding [at 58 Interboro Parkway] for [a] couple of days." (*Id.*) Petitioner's trial attorney made several objections to Detective Hunter's testimony on relevance and hearsay grounds. (*Id.*) With one exception, the objections were overruled. (*Id.*) The trial court sustained the objection to the portion of Detective Hunter's testimony about being told that Petitioner was "hiding" at 58 Interboro Parkway. (*Id.*) At the close of Detective Hunter's testimony, Petitioner moved for a mistrial, arguing that the statements made by Detective Hunter were hearsay, prejudicial and

irrelevant. (*Id.* at 875:24–877:11.) The trial court denied the motion and instead elected to give a curative instruction to the jury. (*Id.* at 877:10–878:25.) Petitioner made a motion for an order of dismissal at the close of the People's case. (*Id.* at 933:22–934:16.) The trial court denied Petitioner's motion and found that there was legally sufficient evidence for the case to go forward against Petitioner. (*Id.*)

Petitioner was the only witness called for the defense. (*See id.* at 940:19–971:2.) Petitioner testified that he frequented the Saratoga Avenue grocery store and was there on the night in question. (*Id.*) According to Petitioner, he was there only to buy bread and immediately ran out of the store when he heard people arguing and shots being fired. (*Id.*) The jury found Petitioner guilty of attempted murder in the second degree, assault in the second degree and criminal possession of a weapon in the second degree. (*Id.* at 1087:6–1088:10.) Petitioner was sentenced to concurrent determinate terms of imprisonment of twenty years for attempted murder, ten years for weapon possession and seven years for assault. (Sentencing Tr. 12:25–13:25.)

Petitioner appealed to the Appellate Division, Second Department raising five claims: (1) the trial court committed error in denying Petitioner's motion to suppress the statements that were made to Detective Parsekian following his arrest because they were subsequent to an "unlawful search or seizure;" (2) the trial court erred in allowing testimony from three detectives regarding the contents of the lost videotape in violation of the best evidence rule; (3) the court abused its discretion and committed reversible error in denying Petitioner's request for a mistrial after testimony was admitted before the jury that Petitioner failed to respond to Detective Hunter after the detective left his card for Petitioner to contact him; (4) Petitioner's convictions were against the weight of the evidence; and (5) the sentence imposed upon Petitioner was excessive.

(Pet. App. Br. 30, 41, 45, 48, 50.) The Appellate Division, in a unanimous decision, affirmed the conviction. *People v. Blake*, 876 N.Y.S.2d 653 (App. Div. 2009). The Appellate Division found that the trial court properly denied Petitioner's motion to suppress the statements. *Id.* The Appellate Division also found that the verdict of guilt was not against the weight of the evidence. *Id.* The remaining contentions were found to be without merit. *Id.* The New York Court of Appeals denied leave to appeal. *People v Blake*, 12 N.Y.3d 923 (2009).

## II. Discussion

### a. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Johnson v. Williams*, 568 U.S. ---, ---,133 S.Ct. 1088, 1091 (2013); *Lafler v. Cooper*, 566 U.S. ---, ---, 132 S.Ct. 1376, 1390 (2012).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different

than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Fourth Amendment Claim

Petitioner argues that his arrest was without a warrant and in violation of *Payton* and that the confessions subsequent to this unlawful arrest are equally tainted and should have been suppressed. (Pet. App. Br. 33–40.) The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest," unless certain conditions exist such as probable cause and exigent circumstances. *Payton*, 445 U.S. at 576; *see also Kentucky v. King*, 563 U.S. ---, ---, 131 S. Ct. 1849, 1856 (2011). However, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Young v. Conway*, 715 F.3d 79, 85 (2d Cir. 2013) (en banc) ("*Stone v. Powell* . . . established that a state prisoner may not be granted federal habeas relief on a Fourth Amendment claim if he has had a full and fair opportunity to litigate that claim in state court."); *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) ("*Stone v. Powell*, 428 U.S. 465, 494 [] (1976), bars us from considering Fourth

8

Amendment challenges raised in a petitioner's petition for habeas relief . . . ."); *Graham v. Costello*, 299 F.3d 129, 133–34 (2d Cir. 2002) ("Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court."); *Cameron v. Smith*, No. 11-CV-5100, 2012 WL 1004893, at *2 (E.D.N.Y. Mar. 23, 2012) (the petitioner could not maintain a Fourth Amendment habeas claim where he "received a full hearing with all the protections that the law required"). Regardless of whether he or she took advantage of that opportunity, "the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Costello*, 299 F.3d at 134.

According to the Second Circuit, federal habeas review of Fourth Amendment claims can be reviewed in "only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *see also Munford v. Graham*, 467 F. App'x 18, 19 (2d Cir. 2012) (summary order) (using *Capellan* standard for Fourth Amendment claims); *Pearson v. LaValley*, No. 12-CV-3386, 2013 WL 1777770, at *2 (S.D.N.Y. Apr. 25, 2013) ("[U]nder Second Circuit law, federal habeas review of *Payton* and other Fourth Amendment contentions is warranted only if the state court provides 'no corrective procedures at all to redress Fourth Amendment violations,' or if there was 'an unconscionable breakdown in that process.'" (citations omitted)); *Quinney v. Conway*, 784 F. Supp. 2d 247, 263 (W.D.N.Y. 2011) (quoting *Capellan* for the two part test); *Montalvo v. Annetts*, No. 02-CV-1056, 2003 WL 22962504, at *15 (S.D.N.Y. Dec. 17, 2003) (same).

Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim in state court, and, therefore, this Court is barred from considering Petitioner's challenge to the state court findings. New York provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial. *See* N.Y. Crim. Proc. Law §§ 710.10–70. "The Second Circuit has explicitly 'approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" *Mathis v. Marshall*, No. 08-CV-3991, 2012 WL 388539, at *14 (S.D.N.Y. Jan. 30, 2012) (quoting *Capellan*, 975 F.2d at 70 n.1), *report and recommendation adopted*, No. 08-CV-3991, 2012 WL 2739873 (S.D.N.Y. July 9, 2012); *see also Quinney*, 784 F. Supp. 2d at 263. The trial court conducted a full pretrial suppression hearing. (Trial Tr. 2:1–107:14.)

Petitioner does not challenge the procedures he was afforded under New York law. Instead, Petitioner raises the same argument he advanced in the state courts — that the statements he made following his arrest should have been suppressed because they were subsequent to an "unlawful search or seizure." (Pet. 5; Pet. App. Br. 30.) Petitioner argues here, as he did in state court, that the statements were subject to the exclusionary rule because they were obtained through a confession given by Petitioner after an arrest made in violation of *Payton*. (Pet. App. Br. 30–31.) The Appellate Division reviewed the trial court's determination and found that "[t]he [trial] court properly denied the [Petitioner]'s motion to suppress, as the fruit of an unlawful warrantless arrest inside his home, statements he made to, or in the presence of, law enforcement officers. The record supports the hearing court's determination that the apartment where the defendant was arrested was not his residence, and that he had no reasonable expectation of privacy in it." *Blake*, 876 N.Y.S.2d at 653–54.

Because Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim in state court and where there was no "unconscionable breakdown" in the process, the trial court's denial of Petitioner's motion to suppress his statements based on the trial court's determination of the weight and credibility of the evidence at the suppression hearing is not reviewable by this Court. *See Mathis*, 2012 WL 388539, at *14 (the petitioner's "Fourth Amendment claims [we]re not cognizable on habeas review" where his "Fourth Amendment claims were litigated fully and fairly at his suppression hearing"); *Quinney*, 784 F. Supp. 2d at 263–64 (the petitioner failed to meet the two part test where "federal courts have approved New York's procedure for litigating Fourth Amendment claims" and he had "not demonstrate[d] that he was precluded from using the corrective mechanism because of an 'unconscionable breakdown' in the system"); *Williams v. Artus*, 691 F. Supp. 2d 515, 528 (S.D.N.Y. 2010) ("The petitioner's Fourth Amendment challenge, however, is not reviewable in a federal habeas proceeding, because the petitioner had a full and fair opportunity to litigate his Fourth Amendment claims during a pretrial hearing based on a motion to suppress evidence."); *White v. West*, No. 04-CV-02886, 2010 WL 5300526, at *12 (E.D.N.Y. Dec. 6, 2010) (denying habeas review where the "[p]etitioner litigated his Fourth Amendment claims both at the suppression hearing and on direct appeal to [the] Second Department [and] [b]y raising his Fourth Amendment claims in these state fora, petitioner demonstrated that state process was available, and indeed, that he availed himself of that process"); *Kirk*, 646 F. Supp. 2d at 545 (the petitioner failed to meet the two part test where New York procedures had been found adequate and the petitioner failed to show "unconscionable breakdown," since "[m]ere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown"). The petition is therefore denied as to Petitioner's Fourth Amendment claim.

### c. Best Evidence Rule

Petitioner claims that the trial court's allowance of the testimony regarding the contents of the lost videotape violated the "best evidence rule." (Pet. App. Br. 41–44.) Petitioner does not cite to the United States Constitution or any federal cases to support his claim. (Resp't Aff. 3.) The alleged violation of the "best evidence rule" is a New York evidentiary rule and not a federal claim. *Monk v. Bradt*, 778 F. Supp. 2d 352, 367 (W.D.N.Y. 2011) ("'[N]ecessarily include[d]' in that category of mere state-law errors that do not warrant habeas relief are 'erroneous evidentiary rulings.'" (quoting *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006))); *Dewall v. Superintendent, Mohawk Corr. Facility*, No. 05-CV-5583, 2008 WL 3887603, at *10 (E.D.N.Y. Aug. 20, 2008) ("Petitioner's claims involve state-law evidentiary matters and are not federal constitutional questions appropriate for habeas review.").

Federal courts have habeas jurisdiction when "a person [is] in custody pursuant to the judgment of a State court *only on* the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has "repeatedly held that federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. ---, ---, 131 S. Ct. 13, 16, (2010) (per curiam) (internal quotation marks omitted) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *see also Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) ("A federal court may not issue the writ on the basis of a perceived error of state law."), *cert. denied*, 133 S. Ct. 390 (2012). "Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimensions will merit habeas corpus relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Lyons v. Girdich*, No. 02-CV-3117, 2003 WL 22956991, at *10 (E.D.N.Y. Oct. 15, 2003) (quoting *Brecht v. Abrahamson*, 507

U.S. 619, 623 (1993)). "For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Lyons*, 2003 WL 22956991, at *11 (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *see also Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 308 (W.D.N.Y. 2011) ("Claims of evidentiary error are cognizable only if the challenged holdings rendered the trial fundamentally unfair."); *Dewall*, 2008 WL 3887603 at *10 (noting that the Due Process Clause applies to evidentiary errors only when they are "so pervasive as to have denied him a fundamentally fair trial" (citing *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985))).

Petitioner has offered no evidence to demonstrate that his trial was "fundamentally unfair" because the store videotape was not introduced at trial. According to several trial witnesses, including the store owner, the videotape was of such poor quality that the shooter could not be properly seen. (Trial Tr. 719:24–720:11, 787:22–789:12, 860:4–15, 863:13–25, 882:23–884:2.) Petitioner had been identified by two eyewitnesses — one witness identified Petitioner in a photo array prior to his apprehension and both identified him at the line-up — and Petitioner made confessional statements — one to the police and another overheard by the police. (Pet. App. Br. 5–15; 21–22.) Petitioner's counsel argued to the jury that the videotape was missing and could have given them key information in the case, and the judge gave the jury a missing evidence instruction. (Pet. App. Br. 27–29; Trial Tr. 993:11–995:3, 1063:16–1064:5.) Thus, it cannot be said that Petitioner's trial was fundamentally unfair because of the absent videotape. The petition is denied as to Petitioner's best evidence claim.

### d. Pre-arrest Silence

Petitioner claims that his right to silence was violated when Detective Hunter testified that the detective left his business card with Petitioner's son and Petitioner never got in touch with him. The Appellate Division addressed this claim when it classified the claim as one of the "remaining contentions" "without merit." *Blake*, 876 N.Y.S.2d at 654. The Appellate Division's finding that the claim was "without merit" is a determination on the merits of the claim, requiring AEDPA deference. *See, e.g., Reily v. Ercole*, 491 F. App'x 225, 228 (2d Cir. 2012) (summary order) (applying AEDPA deference to a case where the Appellate Division found the petitioner's claim "without merit"); *Watson v. Greene*, 640 F.3d 501, 508, n.7 (2d Cir. 2011) ("Although the Appellate Division did not discuss its reasons for rejecting Watson's Confrontation Clause claim, it held that the claim was 'either . . . unpreserved for appellate review, without merit, or [did] not require reversal.' That holding constitutes a decision 'on the merits' that is entitled to AEDPA deference." (alteration in original) (citations omitted)), *cert. denied*, 132 S. Ct. 335 (2011); *Jimenez v. Walker*, 458 F.3d 130, 146 (2d. Cir. 2006) (the Appellate Division's holding that a claim was "either unpreserved for appellate review or without merit" is a determination on the merits requiring AEDPA deference); *Howard v. Walker*, 406 F.3d 114, 120–22 (2d. Cir. 2005) (noting that the Appellate Division's determination that claims "are without merit" is an adjudication on the merits). The Appellate Division's holding is neither "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In the present case, Detective Hunter testified to the fact that he attempted to apprehend Petitioner at his apartment, but never found him there and left his business card with Petitioner's

14

son with a message for Petitioner to call him. (Trial Tr. 864:21–866:10.) Petitioner alleges that the testimony given by Detective Hunter regarding the business card and the State's summation, alluding to the fact that Petitioner could have come forward, implicated Petitioner's silence and were improper references to Petitioner's pre-arrest silence. (Pet. App. Br. 45–46). As argued by Respondent, Detective Hunter did not testify to Petitioner's silence, instead he testified that he attempted to apprehend Petitioner at his residence by leaving a card with his son. (Resp't Br. 14.)

Petitioner claims that he had a right to remain silent prior to his arrest under the protections guaranteed by the Fifth Amendment in *Miranda v. Arizona*, 384 U.S. 436 (1966), and Detective Hunter's testimony violated this right. Petitioner's claim is without merit. *See, e.g.*, *Salinas v. Texas*, 570 U.S. ---, ---, 2013 WL 2922119, at *7–8 (June 17, 2013) (in order for the protections of *Miranda* to apply to a person prior to arrest, he or she must explicitly state that he is invoking his right to remain silent); *United States v. Mavashev*, 455 F. App'x 107, 114–15 (2d Cir. 2012) (summary order) (the petitioner's right to remain silent was not violated when "[n]o evidence was presented that [the petitioner] invoked his right to remain silent or in any other way refused to answer any of [the police officer's] questions"). In order for Petitioner to receive *Miranda* protections he would have had to invoke his right to remain silent under the Fifth Amendment. *See Salinas*, 570 U.S. at ---, 2013 WL 2922119, at *7–8 ("[T]he Fifth Amendment guarantees that no one may be 'compelled in any criminal case to be a witness against himself'; it does not establish an unqualified 'right to remain silent.'").

Petitioner has failed to establish that the determination of the Appellate Division was contrary to, or involved an unreasonable application of, clearly established federal precedent. 28 U.S.C. § 2254(d). The petition is therefore denied as to this claim.

### e. Weight of the evidence

Petitioner argues that the jury's guilty verdict was against the weight of the evidence. (Pet. 6; Pet. App. Br. 48–49.) Petitioner presented this argument to the Appellate Division, which found that the "verdict of guilt was not against the weight of the evidence." *Blake*, 876 N.Y.S.2d at 653–54. For the reasons discussed below, the Court finds that Petitioner's conviction was neither contrary to, nor an unreasonable application of, clearly established federal law.

It is well settled that a "weight of the evidence" claim is distinct from a "sufficiency of the evidence" claim and is a state claim based on New York Criminal Procedure Law § 470.15(5) that is not reviewable in federal habeas proceeding. *Williams v. Bradt*, No. 10-CV-2858, 2012 WL 2914892, at *7 n.3 (E.D.N.Y. July 17, 2012) ("'A "weight of the evidence" claim is based on state law.' The Court cannot consider a purely state law claim on federal habeas review." (citations omitted)); *Echevarria-Perez v. Burge*, 779 F. Supp. 2d 326, 332–33 (W.D.N.Y. 2011) ("[W]eight-of-the-evidence claim is not cognizable on federal habeas review. The 'weight of the evidence' claim asserted here derives from New York Criminal Procedure Law ('C.P.L.') § 470.15(5) . . . ."); *Taylor v. Poole*, 538 F. Supp. 2d 612, 618–19 (S.D.N.Y. 2008) ("It is well established that 'weight of the evidence' claims are not cognizable on federal habeas review, given the difference between such a challenge and that of a challenge based on the sufficiency of the evidence."); *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("In making a 'weight of the evidence' argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law claim, for which habeas review is not available."). Even construing the petition as alleging a sufficiency of the evidence claim, however, the claims fail for the reasons stated below.

The proper inquiry for reviewing a sufficiency of the evidence claim is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos v. Smith*, 565 U.S. ---, ---, 132 S.Ct. 2, 6 (2011) (per curiam) (emphasis in original) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Mi Sun Cho*, No. 12-CR-1084, 2013 WL 1594173, at *2 (2d Cir. Apr. 16, 2013) (per curiam) ("[T]he evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor."). A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." *Mi Sun Cho*, 2013 WL 1594173, at *2; *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos*, 565 U.S. at ---, 132 S.Ct. at 3; *see also United States v. Robinson*, 702 F.3d 22, 34–35 (2d Cir. 2012) ("As we have often stated, this standard is 'exceedingly deferential,' to the jury's role as factfinder."), *cert. denied*, 133 S. Ct. 1481 (2013); *Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011) ("[J]udges must be highly deferential to the jury's verdict of conviction[.]"). Furthermore, a court reviewing a habeas petition must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Langston*, 630 F.3d at 314 (quoting *Jackson*, 443 U.S. at 324 n.16); *see also Dixon v. Miller*, 293 F.3d 74, 79 (2d Cir. 2002) ("The state court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clause of the Fourteenth Amendment, which guards against convicting a defendant without proof beyond a reasonable doubt on each element of his crime."); *Quartararo v. Hanslmaier*,

186 F.3d 91, 97 (2d Cir. 1999) ("A federal court must look to state law to determine the elements of the crime.").

Petitioner was convicted under three of New York's penal statutes — New York Penal Law §§ 110.00, 120.05(2) and 265.03(1)(b). New York Penal Law § 110.00 provides that a defendant is guilty of attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00. New York Penal Law § 120.05(2) provides that a person is guilty of assault in the second degree "when, with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.05(2). New York Penal Law § 265.03(1)(b) provides that a person is guilty of criminal possession of a weapon in the second degree "when, with intent to use the same unlawfully against another . . . such person possesses a loaded firearm." N.Y. Penal Law § 265.03(1)(b).

Petitioner argues that the "jury's verdict of guilty was not amply supported by the evidence" because (1) the victim was not present at trial to offer testimony regarding the incident; (2) the witnesses, Jasmine Lopez and her brother, both admitted that the shooter had a scarf covering his face; (3) the shop owner, Urena, testified that he hid behind the counter and never saw Petitioner with a gun or shoot at Pettaway; and (4) the surveillance videotape was lost by the detectives handling the case. (Pet App. Br. 49.)

Petitioner's challenge to the sufficiency of the evidence is unavailing. Although Lopez and her brother testified that Petitioner entered the store with a scarf covering his face, Lopez testified that she was able to see Petitioner's face because the scarf began to fall when he started shooting. (Tr. 455:11–459:24, 502:21–22, 505:1–5.) Urena, Lopez and her brother all testified

consistently that they saw Pettaway enter the store and then observed Petitioner enter after him. (*Id.* at 451:13–456:11, 502:10–504:22, 669:5–674:1.) The witnesses also testified that Petitioner was quite short and chubby, rendering it unlikely that they would mistake him due to his distinct build. (*Id.* at 455:11–12, 502:21–22.) Petitioner admitted during his testimony that he was in the store when the shooting took place. (*Id.* at 947:1–948:22.) Moreover, there were two post-arrest statements made by Petitioner about the shooting, although Petitioner testified he did not remember the events surrounding those statements. (*Id.* at 962:4–10, 969:17–970:6.) Viewing the record in the light most favorable to the prosecution, and drawing all permissible inferences in the prosecution's favor, the evidence was sufficient to support the verdict. *See Phillips v. Lee*, No. 10-CV-4685, 2012 WL 847432, at *6 (E.D.N.Y. Mar. 13, 2012) ("The evidence adduced established far more than petitioner's 'mere presence' at the crime scene."); *see also Gaskin v. Graham*, No. 08-CV-1124, 2009 WL 5214498, at *1 (E.D.N.Y. Dec. 30, 2009) (upholding a conviction where a "rational factfinder, viewing the evidence in the light most favorable to the prosecution and drawing all permissible inferences in the prosecution's favor, could have found the" petitioner guilty); *Archer v. Fischer*, No. 05-CV-4990, 2009 WL 1011591, at *14 (E.D.N.Y. April 13, 2009) (same). Construing Petitioner's weight of the evidence claim as a sufficiency of the evidence claim, this claim is denied.

### III. Conclusion

For the foregoing reasons, the petition for habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good

faith. *Coppedge v. United States*, 369 U.S. 438 (1962). The Clerk of Court is directed to close the case.

SO ORDERED:

/S/ Judge Margo K. Brodie
_____
MARGO K. BRODIE
United States District Judge

Dated: July 8, 2013
      Brooklyn, New York